CONRAD KEMPF, Respondent, *v.* WILLIAM ZEPPENFELD, Appellant.

### May 16, 1876.

1. Where the evidence is conflicting and is submitted to the jury with proper instructions, the verdict will not be disturbed by an appellate court—appellate courts will not weigh evidence.

2. An instruction that, where defendant alleged a settlement, the burden is upon him of proving such settlement by a preponderance of testimony is not erroneous.

3. The testimony of experts as to the signature of K. to a paper is evidence from which the jury may determine whether the paper was executed by K.

4. A receipt in full, executed by plaintiff, is *prima facie* evidence of a settlement and payment in full.

5. Affidavits in support of a motion for a new trial on account of newly-discovered evidence will be disregarded if they show that nothing but gross negligence prevented the party from knowing, before the trial, the matters alleged to be newly discovered.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*T. Z. Blakeman,* for appellant, cited : Jaccard *v.* Davis, 43 Mo. 535 ; Wag. Stat. 1058.

*Jecko & Hospes*, for respondent, cited: Scooeri *v.* Brashear, 46 Mo. 345; Barry *v.* Blumenthal, 32 Mo. 29; State *v.* McLaughlin, 27 Mo. 111; Philips *v.* Philips, 46 Mo. 607; Jaccard *v.* Davis, 43 Mo. 535; Miller *v.* Whitson, 40 Mo. 97; Goff *v.* Mullholland, 33 Mo. 203; Tilford *v.* Ramsey, 43 Mo. 421; Richardson *v.* Farmer, 36 Mo. 35.

GANTT, P. J., delivered the opinion of the court.

Kempf sued Zeppenfeld to the October term, 1872, of the St. Louis Circuit Court, alleging that at the special instance of defendant he had furnished the materials and laid for him 86 7-22 perches of rubble-stone masonry at $3.50 per perch, making $302.20, and laid for him 188 7-22 feet superficial measure of range-rock masonry at 65 cents per foot, making $122.55, or a total of $424.75, for which plaintiff asked judgment.

Also, Kempf alleged that on October 1, 1870, he did certain other work, and furnished certain other materials— that is to say, he furnished materials and laid 47 17-22 perches of masonry at $4 per perch, making $191; he furnished macadamizing to the amount of $25, sand to the amount of $20, lime to the amount of $11.25, did eleven days' work at $4 per day, making $44, furnished a laborer for three days at $2.75, making $8.25, paid for eight days' work of mason laying plank under foundation at $4 per day, $32, furnished a laborer for two days at $2.75, making $5.50, and again for a day and a half, making $4.02; total $341.02. All these materials were furnished and the work done at defendant's special instance and request; the work, labor, and materials were reasonably worth what was charged, but defendant has failed to pay, etc.

The defendant denied that plaintiff did certain work and furnished certain materials to the value of $420.75, or that the items of said account, or any of them, are correct, or that "defendant ever owed" anything to plaintiff on account of "anything" in the first count stated.

As "to the second pretended cause of action," defendant

says it is not true that plaintiff did the work or furnished the materials in that count sued for, or any of them, or that said account or any item thereof is correct, or that defendant promised to pay the sum therein claimed, or that they were worth the sum of $341.02, *or any other amount*."

Further answering, defendant says that on June 25, 1870, plaintiff, by his undertaking in writing, bound himself to do the stone-mason work at the colored school on Christy avenue, upon the same terms and conditions that were contained in a contract between defendant and the Board, etc., of St. Louis Public Schools, dated March 11, 1870, at the rate of $3.25 per perch; that thereupon plaintiff began the work, and that it is the same which is sued for in this suit; that about September 20, 1870, after all the work and labor had been done, plaintiff and defendant accounted respecting the same, and $150 was found to be due from defendant to plaintiff. This sum defendant paid to plaintiff in full satisfaction for "said demands." Wherefore defendant prayed judgment.

Plaintiff, in reply, denied "that he signed or executed said undertaking in writing mentioned in said answer and filed therewith;" denied that he obligated himself to do the said work at the rate of $3.25 per perch, and denied the accounting alleged on September 10, 1870, or at any other time; denied the payment of $150, or the taking by plaintiff of any such sum in full or in satisfaction of the demands sued for in this case. This reply was verified by affidavit.

The trial of the cause was begun on December 17, 1874, was continued through the 18th, and ended with a verdict, on December 19, 1874, in favor of plaintiff Kempf, with damages, as to the first count, in the sum of $251.72, and with damages, as to the second count, in the sum of $213.94. Judgment was thereupon given for $465.66 in favor of plaintiff. A motion for a new trial was filed within four days, and on May 10, 1875, it appears to have been over-

ruled. On May 31, 1875, a bill of exceptions was filed,. and the case went by appeal to the general term, which affirmed the judgment, and Zeppenfeld appealed to this court. The delays were all accounted for in the bill of exceptions. By this paper it appeared that at the trial plaintiff testified that, between June 1st and September 20, 1870, he, at the request of defendant, furnished the materials. and laid 86 7-22 perches of rubble masonry at the colored school on Christy avenue, in this city, for the price agreed on, between plaintiff and defendant, of $3.50. In like man- ner he furnished materials and laid 188 17-22 feet, superficial measure, of range-rock masonry at 65 cents per.foot, agreed upon by the parties before the work was begun. After- wards, in September and October, plaintiff did for defend- ant, on.same building, at his request, the work, and furnished the materials mentioned in the second count. The prices. charged were reasonable and just. This was extra work. The work under his contract amounted to $424.75. The total of the two sums was what he sued for. On this defend- ant paid him $150, and to James Crinnion, quarryman, at the request of plaintiff, $200 more. This is all he ever paid to plaintiff, or any one for plaintiff.

On cross-examination plaintiff stated that these payments were made by checks ; that he never requested defendant to pay the balance of Crinnion's bill ; whether the balance of Crinnion's bill is paid plaintiff does not know. Plaintiff and defendant never had a settlement ; they never had a. written contract for the work. Plaintiff made a proposal in writing, but defendant never accepted it. Defendant. told plaintiff to go and do the work. Plaintiff denied his. signature to the paper annexed to the answer, and said it. was a forgery. (This was the receipt mentioned in that pleading.) He also denied that defendant paid him the money mentioned in it ; never went to defendant's house with Crinnion. He also denied his signature to the receipt, to Heisel, of $200, for stone mason's work on house on

Gravois road; he said that it, too, was a forgery. He pronounced another receipt, purporting to be signed by him, dated August 1, 1870, for $20, to be a forgery; another receipt, dated February 20, 1870, for $50, for work on a house on Manchester road, he pronounced a forgery; and the same he declared in respect of a receipt, dated April 16, 1870, for work done on Hesse's place, and in respect of another receipt, dated February 20, 1869, for cellar work on Hesse's house, on Clayton road. He proceeded to say that he had done for defendant similar work to that here sued for; that he did work for him on Hesse's house, on the Clayton road, and on White's house, on the Manchester road, and also similar work since that charged for in this suit; built the foundations of Logan Dameron's houses for him, corner of Fourteenth and Washington avenue; always got his money without trouble, except in this case; gave him receipts in full for the work done on Hesse's house, and White's; don't know what defendant did with these; gave him a receipt, also, for the White job.

Plaintiff then called Yousal, who confirmed his evidence touching the terms on which he contracted with defendant; also Jacob Kempf and Harry Stiffen, who testified to the same effect; and George Siener, who testified that he had presented to defendant the account on which this suit was brought; that in the most deliberate manner he promised, in October, 1870, to pay it as soon as he got his money from the public schools, and afterwards professed not to know Kempf at all, but, when confronted with him (he tried to avoid meeting him), he denied owing him anything. He also called Milton Wash, secretary of the public schools, who testified that the defendant was the contractor for building the colored school-house on Christy avenue. He produced a voucher for the extra work done by defendant, containing an itemized statement of the whole matter, and the prices paid for each item. Defendant first made an account for a much larger amount, which was cut down.

The plaintiff was allowed to read this account to the jury, against the exception of defendant, whose points were that it was incompetent to show either the quantity or value of the work done, and was calculated to prejudice the minds of the jury. This was the case ot the plaintiff.

The defendant examined John Moran, who testified that he knew Crinnion, who was then dead, and he proved the genuineness of certain memoranda purporting to be made by him.

He also produced as a witness Henry Chensler, who testified that the signatures of plaintiff, declared by him to be forgeries, were genuine. He did not see plaintiff write them ; only judges from his knowledge of his handwriting. Witness was a bricklayer, and did not think himself an expert in judging of handwriting.

Defendant then testified that, in May, 1870, plaintiff came to him to get a job ; he had got other jobs from defendant ; gave him the job of the colored school-house, on Christy avenue ; told him to bring in a bid for it, telling him to find some one to do the range-work cutting. He brought Yousal, and also his bid ; had a talk about the range-work, and it was verbally agreed they were to cost 30 cents per foot in the rough, 30 cents for dressing, and 5 cents for laying, making 65 cents for dressed stones laid in the building ; "told him to go on by my direction ;" he never went by my direction ; took an entirely different course. About that time I got a contract for Logan Dameron's house ; made an agreement with plaintiff about it ; then agreed that stone work in the school-house, should cost $3.25 per perch, and that of Dameron's house $3 per perch. He fell 25 cents on the school-house, in consideration of getting the other job. Witness then positively, and in detail, testified to the settlement in September, and the payment of $150 in full of the balance struck. This balance was reached by defendant paying Crinnion $254.50, at Kempf's request, and crediting defendant with payments

already made to plaintiff. At this settlement no one was present besides plaintiff, defendant, and Crinnion. Defendant testified that the receipt of that date was signed by plaintiff in his, defendant's, presence. He also testified to the genuineness of the other signatures denied by plaintiff, and denied, in the most positive manner, that he owed plaintiff one cent.

On cross-examination he said that he was a carpenter and builder; that he did not write plaintiff's name to any of the papers produced; that he wrote the body of the papers, but plaintiff signed them.

Casmer Heisel testified that the signature of plaintiff to the receipt for rubble masonry on Block's house, on Gravois road, was genuine.

George Otto testified, contradicting, in part, the statement made by Siener.

Philip Stock testified that as an expert he would say that the same person wrote the acknowledged and unacknowledged signatures of plaintiff's name.

D. A. Sutton and William E. Wagner testified to the same thing; the latter said he was not an expert as to German handwriting, and that the body of the receipt, dated September 10, 1870, and the signature were written in the same hand.

This was all the evidence. The court declared the law as follows, for the plaintiff:

"The defendant is not entitled to any credit for money paid to Crinnion, on account of stone work furnished, unless said money was paid by defendant with plaintiff's consent.

"If the jury believe from the evidence that the plaintiff did the work set out in the first count of plaintiff's petition, and that the same was done under contract or agreement, they will find for plaintiff in such sum as from the evidence he is entitled to; and if the jury further find that the plaintiff furnished the materials, and did the extra work set

forth in the second count of said petition, or any portion of said work, they will find for the plaintiff on that count such sum as from the evidence they shall believe .said work and materials were reasonably worth, said findings, however, to be credited with such sum or sums as the jury may believe from the evidence were paid on account of said work to plaintiff, or on his order, or to James Crinnion with his consent.

" The jury are instructed that the burden of proving a settlement or payment rests upon the defendant, and the defendant must establish the same by a preponderance of testimony."

To all these instructions defendant excepted.     At defendant's request the court instructed as follows :

" That the testimony of experts, in relation to the signature of Kempf to the different papers read in evidence, is competent evidence from which the jury may infer as to whether or not said Kempf did execute said papers.

" That if they believe from the evidence that plaintiff executed the agreement read in evidence, and did the work under said agreement, then the jury cannot allow anything more for the work specified in said contract than the prices therein mentioned.

" And if the jury further believe that afterwards a settlement was had between plaintiff and defendant in this case, and that said plaintiff, in pursuance of said settlement, did accept a certain amount as payment or settlement in full of all work, then plaintiff cannot recover.

" That if they believe from the evidence that plaintiff executed and delivered to defendant the receipt in full read in evidence, then the jury will consider said receipt as *prima facie* evidence of a payment in full.

" That if they believe from the evidence that any witness in this case has willfully sworn falsely to any material matter, then they are authorized and may reject the whole of the testimony of such witness."

After verdict for plaintiff, defendant moved for a new trial, assigning as reasons :

1. The admission of the voucher produced by Milton Wash.

2. Because the court improperly instructed the jury.

3. Because the verdict was against evidence.

4. Because of newly-discovered evidence.

5. And because the damages were excessive.

An affidavit by defendant, and several by other persons, were filed in support of the motion.

1. We find no error in this record. The evidence was contradictory, but the jury are the judges of the credibility of witnesses, and they have decided in this case for the plaintiff, upon a fair presentation of the issues, with appropriate instructions. The genuineness or forgery of the signature of the plaintiff to the various papers produced was one of the principal points of dispute. On this issue plaintiff and defendant contradicted each other flatly. The defendant adduced several witnesses to support his theory of the matter, some of whom testified so as to strengthen, and others so as to weaken, that theory. We perceive no reason for granting a new trial, so far as the instructions are concerned ; and it is needless to say that we will not attempt to weigh the conflicting evidence.

2. We do not think that the court erred in admitting the testimony of Wash, as to the prices paid for work, to the defendant, by the Board of, etc., Public Schools. The inquiry was as to the quantity, price, and value of certain work done at the colored school-house on Christy avenue. It appeared that defendant, the person who did this work for the schools, had, in the first place, made out an account for this work at one price, but subsequently settled for it at a much less price. Why this settlement was not good evidence, as an admission by defendant of such quantity, price, and value, we are unable to see.

3. The reasons for a new trial, shown by the affidavit filed

after the verdict, are wholly insufficient. The defendant swears that *he had discovered since the trial* that the plaintiff "is a person of no moral standing or credit in the community in which he lives;" that his reputation for truth and veracity amongst those who know him is so bad that his credit can be impeached, and he himself shown clearly to be not entitled to be believed under oath; that affiant did not know this fact at or before said trial, and did not learn it until afterwards, when several persons volunteered to tell him of it;" and if a new trial be granted him he promises to demolish plaintiff's character completely. The defendant goes on to declare himself surprised by the denial of plaintiff, under oath, of his signature to the receipts which defendant produced; he admits that, forasmuch as plaintiff had denied under oath, in his reply, that he had signed the contract set up in defendant's answer, he (defendant) "partly feared" that he would also deny his signature to the receipt in full; but defendant did not expect that he would deny the genuineness of the other papers, etc., and that if a new trial be given he will make full proof, etc. Defendant also promises in that event to impeach the credit of Siener, one of plaintiff's witnesses. The affidavits of several persons are filed, impeaching the credit of the plaintiff, and of one impeaching the credit of Siener.

We are not in the least surprised that the Circuit Court disregarded these affidavits. It is a familiar rule that the strength of the whole chain must be tested by that of any link of it; and it is manifest that the link to which our first attention is naturally and necessarily drawn will not endure the slightest strain. The defendant had been for years acquainted with plaintiff; had for years employed him to do work; was in the same general line of business with him; produced at the trial several witnesses, who testified that they had known plaintiff intimately for ten years or more; had been warned, in the most authentic manner, that

a paper on which he relied for his defense was by the plaintiff declared to be a forgery. But he is not ashamed to declare himself to have been, until after the trial, unacquainted with the estimate which those who knew him had of the truthfulness of the plaintiff, and to have been surprised at his denial of the genuineness of other papers held by the defendant. Defendant produced several witnesses to prove that these denials of the plaintiff were false—some of them, indeed, testifying in a manner that must have disappointed him who called them. He was, then, not only aware of the issue made, but had prepared to meet it. If the present were the first occasion when an unsuccessful party sought to obtain a new trial on the ground of surprise and newly-discovered evidence it would furnish an excellent illustration of the rules established for refusing such applications. These rules are laid down in many cases cited by the counsel for respondent from the reports of our own Supreme Court. It is unnecessary to refer to them particularly. They are familiar to the bar, and their lesson is unmistakable. The judgment of the Circuit Court is affirmed, all the judges concurring.